SHARNA C. CLENNON ET AL. *v.* HOMETOWN
BUFFET, INC.
(AC 24168)

Lavery, C. J., and Schaller and Peters, Js.

Argued May 26—officially released July 27, 2004

*Laura L. Daly*, pro hac vice, with whom were *Eileen R. Becker* and, on the brief, *David A. Donna*, pro hac vice, for the appellant (defendant).

*John D. Palermo*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendant, Hometown Buffet, Inc., appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiffs, Sharna C. Clennon, a minor, and Michelle Chung, her mother, who brought this personal injury action individually and as the next friend of her daughter. The court held the defendant liable for the injuries that the child sustained following a fall in the defendant's restaurant. The defendant's claims on appeal can be summarized as asserting that there was insufficient evidence to sustain a conclusion of liability and that the court improperly determined that no evidence of contributory negligence on the part of Clennon was established. We affirm the judgment of the trial court.

In its memorandum of decision, the court set forth, in relevant part, the following facts and conclusions. "The defendant, Hometown Buffet, Inc., is a restaurant in West Hartford at which customers serve themselves, buffet style, from various stations. Desserts are obtained at an aisle on one side of which are baked goods and on the other side ice cream and yogurt. The aisle intersects with a hallway leading to the kitchen, and its floor is tile.

"The plaintiff Sharna C. Clennon, an eleven year old girl, accompanied her mother, brother and several other family members to the defendant restaurant on June 30, 2001. . . . While her family obtained food at the buffet stations, [the child] went directly to the ice cream dispenser for her favorite dessert. At that time, she saw ice cream spilled on the floor near the ice cream station. After the [child's] mother finished her meal, she asked the [child] to get her an ice cream cone.

"In the meantime, Brendan McKibbin, the manager of the restaurant, saw the mess near the ice cream station and ordered an employee, Carlos Figarola, to mop the dessert aisle. The manager testified that mopping leaves a slight film of water on the tile that takes about five to seven minutes to dry. However, the heat blown from the ice cream machine dries the floor immediately adjacent to the dispenser faster. He further testified [that] after the area was mopped, yellow cones were placed in the mopped area to warn customers. They are customarily removed when the area is dry. However, customers still traverse the mopped areas to get their food.

"On the mission to obtain the ice cream for her mother, the [child] proceeded from the family table in the dining area behind the ice cream and yogurt dispensers into a hall leading to the kitchen, around the corner to the dessert aisle. She fell at the intersection of

the hall and the aisle. When she fell, her hand felt the floor, and she noticed that it was 'oily and greasy' and saw footprints on the floor. After she fell, she saw the yellow warning cones and she landed near one. Her scream of pain alerted the manager, who was nearby. He estimated that the plaintiff fell about five minutes after Figarola had mopped the dessert area and that that area was dry at the time [the child] fell.

"[The child's] brother heard his sister crying. He found her lying on the floor, picked her up and put her on a chair. He testified that he saw water coming from the kitchen, but, based on other evidence, the court does not believe this testimony. [The child's] mother went to the [child] after she was placed in the chair and noticed that the floor near the chair was wet and greasy. Xandra Braville, a patron at the restaurant, testified that she observed the mess of melting ice cream in the dessert aisle. When Braville was finishing her meal, her son told her that a girl was crying. Braville, a medical assistant, went to help the [child]. When she approached, she noticed the area of the dessert aisle had been mopped and was still wet.

"The court resolves the conflicting testimony by concluding that the area where [the child] fell was still wet from the mopping. This is confirmed by the fact that a yellow cone was still on the floor very near where [the child] fell. The cones warned the [child] of the slippery conditions, but because of the route she traveled from her family table toward the dessert aisle, she did not see the cones until she was already at the intersection of the hallway and the aisle. There was no evidence adduced that she had proceeded without caution. . . .

"[T]he court finds that the defendant breached [its] duty [to exercise reasonable care to have and maintain the premises in a reasonably safe condition for the reasonably anticipated uses of it] by mopping the floor

and leaving it wet in the area of and at the time the [child] fell. Because the defendant itself created the dangerous condition, there is no issue of its notice of it. The court further finds that the defendant's negligence was a substantial factor in causing the [child] to fall and the proximate cause of the injuries that she suffered. Although the defendant pleaded that the plaintiff herself was negligent, the court finds no evidence to support that allegation."

The court rendered judgment in favor of the plaintiffs, and the defendant appealed. Additional facts will be set forth as necessary.

I

The defendant claims that there was insufficient evidence to support a conclusion of liability. The defendant argues that the evidence showed that the child did not slip on water, but rather on some other substance and that because the defendant was unaware of the presence of the other substance, it cannot be held liable.

The crux of the defendant's argument, which is that the child slipped on some other substance, is a challenge to a factual finding. "The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . In reviewing the trial judge's factual findings, we give the evidence the most favorable reasonable construction in support of the judgment. . . . A factual finding may be rejected by this court only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Kelman* v. *McDonald*, 24 Conn. App. 398, 400–401, 588 A.2d 667 (1991).

To determine whether the court's factual finding that the child slipped on water is supported by the record,

we set forth additional facts that were adduced at trial. Braville testified that the area where the child fell was wet and appeared to have been mopped. She also explained that the hallway leading to the dessert aisle was wet. Braville explained that "[y]ou could just [see] that somebody had passed the mop there, and it wasn't fully dried as yet."

McKibbin testified that it is the standard practice of the defendant to leave warning signs in place until the floor "is completely dry." Those warning signs are placed on all sides of the area being mopped. He also testified that when he responded to the child's fall, he observed one sign directly behind her and a sign on a tripod next to her. According to his testimony, those signs had been placed five to seven minutes earlier when Figarola had mopped the floor.

The court's finding that the child slipped on water from the mopping was not clearly erroneous. The court heard testimony from the defendant's manager that an employee had mopped the area shortly before the fall. The court also heard the testimony of Braville, who explained that the dessert aisle and the hallway leading to it were wet with water when she arrived to check on the child. In addition, on the basis of the testimony of McKibbin, the court drew the logical inference that because the defendant's policy dictated that the warning signs were to remain in place until the floor was dry and because the warning signs were in place at the time of the fall, the floor was not yet dry from the earlier mopping.

The court was not required to accept the defendant's interpretation of the facts or any of the conflicting facts offered by the plaintiffs' witnesses. The court, acting as the trier of fact, was free to interpret the facts as it saw fit. See *Kelman* v. *McDonald*, supra, 24 Conn. App. 401 (" 'trial judge is the sole arbiter of . . . the weight

to be given specific testimony' "). Because the court's factual conclusion is supported by evidence in the record, it is not clearly erroneous.

Our resolution of that issue disposes of two other claims made by the defendant. The defendant argues in its brief that the court's conclusion that "the defendant created a dangerous condition on its premises 'by mopping the floor and leaving it wet in the area of and at the time [the child] fell' " was unsupported by the evidence. Analysis of that issue is subsumed in our discussion of whether there was sufficient evidence to hold the defendant liable. The defendant also claims that "no basis [existed] as a matter of law for a finding that the specific unsafe condition [the plaintiffs] complained of, a greasy or oily substance on the floor, existed for a sufficient length of time for the defendant to have known of or discovered the condition." The court resolved that issue when it found that the child had slipped on water, not an oily substance, and, because we cannot say that this determination was clearly erroneous, we need not address that claim.

## II

The defendant also claims that the court improperly determined that contributory negligence on the part of the child was not proven. The defendant argues that the presence of the warning signs and the testimony of the child indicated that she shared some of the blame for the accident. We are not persuaded.

"Contributory negligence is a question of fact to be determined by the trier from all the circumstances. The burden of proof is on the defendant. Where the trier concludes that one is free from contributory negligence, that conclusion must stand unless the conduct involved is manifestly contrary to that of the reasonably prudent . . . [person]." (Internal quotation marks omitted.) *Douglass* v. *95 Pearl Street Corp.*, 157 Conn. 73, 79–80,

245 A.2d 129 (1968). "Contributory negligence becomes a question of law only when the conduct of the person under investigation is so manifestly contrary to that of a reasonably prudent person similarly situated that the mind of a fair and reasonable person could reach but one conclusion." *Greene* v. *DiFazio,* 148 Conn. 419, 425, 171 A.2d 411 (1961). When the actor is a child, the conduct of that child is "to be measured by that which may reasonably be expected of children of similar age, judgment and experience." Id., 424. The defendant challenges the factual determination of the court that there was no evidence of contributory negligence. On appeal, "where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

To determine whether the court's conclusion that the child was not contributorily negligent was clearly erroneous, we set forth additional facts. At trial, McKibbin testified that the child could not have seen the warning signs until she turned the corner from the hallway into the dessert aisle, at which point the cone would have been about one-half foot in front of her. With respect to her trip to the ice cream machine, the child testified that she was walking carefully. She also testified that she was looking at the ice cream machine and not at the floor.

We cannot say that the court's determination that the child was not contributorily negligent was clearly erroneous. The court based its finding that the child could not see the cones on the testimony of the defendant's manager. Although the child may not have been paying attention to the condition of the floor, there was no evidence that she, as an eleven year old, observed

something that diverted her attention from the ice cream machine to the floor. Further, at trial, the burden of proof was on the defendant, and it failed to provide evidence that contradicted her testimony that she had proceeded carefully. See *Douglass* v. *95 Pearl Street Corp.*, supra, 157 Conn. 79. The court's determination that the child was not contributorily negligent was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.